## MARMADUKE v. McDONALD et al.

No. 25285.  Nov. 5, 1935.

Rehearing Denied Nov. 26, 1935.

Reily & Reily, for plaintiff in error.
Goode, Dierker and Goode, for defendants in error.

PER CURIAM. This is an appeal from a judgment and decree of the superior court of Pottawatomie county, Okla., rendered therein on the 19th day of June, 1933, said decree and judgment of the court being in favor of the defendants in error and against the plaintiff in error. Plaintiff in error was defendant in the lower court, and the parties hereto will be referred to as they appeared in the court below.

J. J. Cuff and Henry McDonald filed their petition in the superior court of Pottawatomie county, Okla., on the 17th day of July, 1931, against O. H. Marmaduke, alleging that J. J. Cuff was the owner and

in possession of lot 8, block 3, in the original town site of Maud, Okla., and the building thereon on the 19th day of December, 1928; that on said date the said J. J. Cuff entered into a written contract with O. H. Marmaduke, whereby Marmaduke leased said premises for the term beginning January 1, 1929, and ending on December 31, 1933, for the sum of $12,100, to be paid at the rate of $200 per month. Marmaduke went into possession under the terms provided in said lease and paid the rentals as agreed upon for the year 1929, but became delinquent during the years 1930 and 1931, in the total sum of $1,800, the same being for the months of May, July, August, and December 1930, and for the months of April, May, June, and July, 1931.

Plaintiffs say in their petition that on or about the 1st day of July, 1931, and in the nighttime, without the knowledge and consent of plaintiffs, the said O. H. Marmaduke removed the stock of goods owned by him located on said premises, and thereafter sent the keys to said premises to the plaintiff by registered mail; but that plaintiffs promptly notified the said O. H. Marmaduke that they would not consent to a rescission of said contract, and that they would expect him to pay the rentals as he had agreed to do and made demand for payment; but the said O. H. Marmaduke failed and refused and continues to refuse to pay the rent as provided for in said lease contract.

The defendant in his answer says that he did make and enter into a pretended lease with the said J. J. Cuff, covering the premises in question, but that at the time of the execution of said lease, the said J. J. Cuff falsely, wrongfully, and fraudulently represented that he was the owner of said lot in question, but, as a matter of fact, the said J. J. Cuff had no right, title, interest, estate or equity in and to said property at the time of the execution of said lease, all of which was unknown to said defendant at said time, and that what rentals he paid upon said property, he paid under the mistaken belief that the said J. J. Cuff had a right to lease said property, and that upon discovery of the fraud perpetrated upon him by the said J. J. Cuff, he immediately ceased paying rent upon said premises and removed his stock therefrom.

J. J. Cuff, one of the plaintiffs herein, died on or about May 25, 1933, and Henry McDonald was appointed administrator of his estate, and said cause was revived in the name of Henry McDonald, as administrator of the estate of J. J. Cuff, deceased.

One of the defendant's principal defenses in the trial court was that, when he discovered that plaintiff no longer held title to the real estate, he had the right to breach the contract, vacate the property, and refuse to pay any more rent, notwithstanding the fact that the person to whom the property was transferred was joined with the original owner as plaintiff, and there is no dispute between them as to ownership of the property. The record title was in Cuff at the time of the execution of said lease. No one ever questioned defendant's right to possession. Certainly the defendant is not permitted to try the title as between Cuff and McDonald when sued for rent, particularly when Cuff and McDonald are both parties to the lawsuit. The record shows that the warranty deed from Cuff to McDonald was signed on the 11th day of July, 1928, and filed of record in the office of the county clerk of Pottawatomie county, Okla., on the 26th day of December, 1928; the lease agreement having been entered into on the 19th day of December, A. D. 1928.

The records disclose that Cuff owned the property at the time the lease was executed; that he collected the rents for 20 months under the terms and conditions of the lease. Granting that there had been a change in the title, defendant was in possession of the property when the change was made, and McDonald had notice of the rights of Marmaduke and stood idly by for two and one-half years, while the defendant, Marmaduke, attorned to Cuff as landlord, and certainly would be estopped by silence and laches from attacking defendant's lease.

In Ghiradelli v. Greene, 56 Cal. 629, the Supreme Court of California said:

"The title or possession of real estate is not put in issue, in an action to recover rent alleged to be due on a written lease, by an answer denying the plaintiff's title and right of possession and alleging the title and right of possession to be, in someone else."

The court further said:

"If the defendants entered under a lease they could not dispute the title of the landlord. If they did not enter under a lease he could not recover in this action, because he based his right to recover upon such a lease. * * *"

If the defendants had set up in their answer an eviction under title paramount to that of the plaintiff, the case might be different. But in the absence of any such plea, defendants were concluded upon the question of title by entering under a lease from

the plaintiff. * * * The defendants' allegation of title in somebody else raised an immaterial issue and that allegation might have been stricken out or disregarded altogether.

A similar question was under consideration by the Supreme Court of Washington in Tryon v. Davis, 35 P. 598. The facts in that case are much like the facts in the case at bar, and in the first and second paragraphs of the syllabus, that court used the following language:

"In an action for rent under a lease, an answer alleging that during his term, defendant found that the lease was invalid because made by plaintiff, a married man on community property, without joinder of his wife; that he notified plaintiff that, owing to this defect, he would no longer occupy under the lease, and was ready to surrender or pay a reasonable rental from month to month, is bad, as failing to allege that, before electing to rescind, he demanded of plaintiff and his wife a new lease on the same terms.

"In an action for rent under the lease, plaintiff, the lessor, need not prove ownership."

Thompson on Real Property, vol. 2, p. 61, says;

"Title of Landlord to Sustain Relation. The validity of landlord's title is not material in determining whether one occupying his premises stands in the relation of tenant to him. The relation of landlord and tenant does not rest upon the landlord's title, but upon the agreement between the parties, followed by the possession of the premises by the tenant under such agreement. One who enters into possession of real estate under a written lease for a term of years will not be relieved from the provisions of said lease merely because he discovers that the title to the leased real estate has been by the lessor transferred to another where the lessor and his grantee join as party plaintiffs in a suit to enforce the terms of the lease contract."

One other question is raised by the defendant, and that is that the trial court permitted the plaintiff to introduce hearsay evidence not properly authenticated or properly certified to. The plaintiff in this action offered in evidence, in part, the record of the evidence given by Cuff in a former trial. This was objected to by the defendant for the reason that it was not properly authenticated, not signed by the court clerk or settled by the trial judge, or filed of record by the court clerk.

It appears that in a companion case, tried in the district court of Pottawatomie county. Okla., the said Cuff testified as a witness as to the execution of the lease in question; this testimony being incorporated in case-made in cause No. 14584, in the district court of Pottawatomie county, Okla., in which J. J. Cuff and Henry McDonald were plaintiffs and O. H. Marmaduke defendant, which case-made bears the signature of the official court reporter of the district court of Pottawatomie county, Okla., and certified to by him as being a full, true, complete, and correct transcript of all the testimony and evidence taken at the trial of said cause and attached to and made a part of said case-made, and the certificate of attorneys in which the attorneys for the defendant certify that said case-made contains a full, true and complete copy of all proceedings in said cause, including all pleadings filed and proceedings had, and all evidence offered and introduced by both parties, all orders and rulings made and exceptions saved and all records upon which the judgment and journal entry in said case was made and entered, and that the same is a full, true, correct and complete case-made.

In view of the fact that counsel for the defendant signed a certificate attached to and made a part of said case-made, this court is of the opinion that said testimony was competent and proper, and defendant's rights were not in anyway prejudiced by such testimony.

Numerous assignments of error were complained of by defendant, but it is apparent from all the pleadings in this case and the testimony introduced that said judgment should be affirmed. Doubtless the trial court held to the view that when a man enters into a written contract, he must abide by the terms thereof, unless he can show some legal reason for violating the terms. The trial court was justified in sustaining the demurrer to the evidence (Marmaduke v. Cuff et al., 173 Okla. 25, 46 P. (2d) 366), and the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Thomas S. Harris, J. V. Frazier, and C. B. Rockwood in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Harris and approved by Mr. Frazier and Mr. Rockwood, the cause was assigned to a Justice of this court for

examination and report to the court. There-after, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.